**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| YOLANDA POLHILL, <br><br> Plaintiff, <br><br> v. <br><br> NAVIENT SOLUTIONS, LLC, <br><br> Defendant. | HONORABLE KAREN M. WILLIAMS <br><br> Civil Action <br><br> No. 19-8861 (KMW-AMD) <br><br> **OPINION** |

Appearances:

Steven Alan Alpert, Esq.
Price Law Group
1 Meadowlands Plaza
Suite 200
East Rutherford, NJ 07073
    Counsel for Plaintiff Yolanda Polhill

Benjamin Evan Gordon
Stradley Ronon Stevens & Young LLP
LibertyView
457 Haddonfield Road
Suite 100
Cherry Hill, NJ 08002
    Counsel for Defendant Navient Solutions, LLC

**WILLIAMS**, District Judge

### I. INTRODUCTION

This matter comes before this Court pursuant to the Motion for Summary Judgment filed by Defendant Navient Solutions, LLC ("Defendant" or "NSL"). Defendant seeks summary judgment on the sole count alleging a common law claim of intrusion upon seclusion in connection

with NSL's efforts to collect a debt from Plaintiff Yolanda Polhill ("Plaintiff" or "Polhill").[1]  For the reasons articulated below, NSL's Motion for Summary Judgment is denied.[2]

## II. BACKGROUND

The Court will recount the undisputed facts relating to the invasion of privacy claims as derived from the Local Rule 56.1 statements of undisputed material fact.  Moreover, the Court will reference when it sets forth additional or disputed facts.

NSL is engaged in the business of servicing federal and private student loans and, in connection with this business, may take certain actions to collect payments, including making telephone calls to delinquent customers.  *See* Def.'s Statement of Uncontested Material Fact Not in Dispute ("SMF"), ECF No. 53-1, ¶ 3.  In 2004, Jonathan Polhill ("Mr. Polhill") borrowed about $6,000 through a student loan ("Student Loan") to fund his college education; his sister, Plaintiff, was the cosigner.  *Id.* ¶¶ 1-2.  NSL began servicing the Student Loan at its inception in January 2004.  *Id.* ¶ 5.  Mr. Polhill and Plaintiff defaulted on the Student Loan and NSL began placing telephone calls to them at the telephone numbers provided to NSL.  *Id.* ¶ 6.  Regarding Plaintiff, NSL began calling her cellular telephone number.  *Id.* ¶ 7.  On May 3, 2017, Plaintiff contends that she revoked her consent for NSL to call her on her cellular telephone number.[3]  *Id.*

---

[1] This Motion originally sought dismissal of Plaintiff's Telephone Consumer Protection Act claim; however, the Court signed a stipulation from the parties dismissing the claim on June 27, 2022.  *See* ECF No. 58.

[2] This Court has jurisdiction pursuant to 28 U.S.C. § 1367(a) and 28 U.S.C. § 1332.

[3] The Court notes although this statement appears in Defendant's Local Rule 56.1 Statement and Plaintiff does not dispute it, the use of the word "contends" conveys that there remains some dispute surrounding this fact.  Indeed, this is confirmed in Defendant's Response to Plaintiff's Supplemental Statement of Material Facts ("Def.'s RSSMF") where Defendant disputes Plaintiff's contentions that she revoked consent four times, asserting that Defendant called the number but could not be sure it was speaking with Plaintiff.  Def.'s RSSMF ¶¶ 1-6.

¶ 9.    A call log generated by NSL shows that the calls continued after May 3, 2017, although Plaintiff answered fewer than ten calls.   *Id.* ¶¶ 10-11.

There are many disputed facts in this matter.    First, although Plaintiff kept her phone inside of her purse set to vibrate during the workday, she disputes any contention that the calls were not distracting and contends that she was reprimanded by her supervisor after answering the phone to ask NSL to stop calling her.   *Id.* ¶ 12; Pl.'s RSMF ¶ 12.    Second, facts concerning the frequency and quantity of the calls and whether, and how many times, Plaintiff revoked her consent to receive said calls, remain in dispute.    Plaintiff contends that she asked NSL to stop calling her four times – in May 2017, August 2017, October 2018, and January 2019 – but NSL called her 881 times from May 2017 through 2019.    Pl.'s SSMF ¶¶ 1-8.    In response, NSL (1) denies that these facts are material and (2) contends that while they did call Plaintiff's telephone number at the above-referenced times and requested to speak with the Plaintiff, the individual refused to verify their identity.    Def.'s RSSMF ¶¶ 1-7.    Finally, there are disputed facts concerning alleged stress-related headaches stemming from NSL's alleged actions.    NSL sets forth facts that Plaintiff continues to suffer from headaches once per week, even though NSL's calls ceased.    Def.'s SMF ¶¶ 46-51.    Plaintiff contends that the testimony does not support this contention; Plaintiff's stress-related headaches have ceased.    Pl.'s RSMF ¶ 50.

### III. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416

3

(3d Cir. 2015)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020)("A fact is material if—taken as true—it would affect the outcome of the case under governing law."). Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini*, 795 F.3d at 416 (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the burden of identifying portions of the record that establish the absence of a genuine issue of material fact. *Id*. (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then "shifts to the nonmoving party to go beyond the pleadings and 'come forward with 'specific facts showing that there is a *genuine issue for trial*.''" *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). To survive a motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). When considering a motion for summary judgment, the court views the facts and all reasonable inferences drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

**IV. DISCUSSION**

The allegations in the Complaint are straightforward as to Plaintiff's claim for intrusion upon seclusion (Count II).   Compl. ¶¶44-46.   Plaintiff avers that despite advising ASL on four different occasions to cease contacting her, ASL called her hundreds of times about the Student

4

Loan. *Id*. ¶¶ 8-40. ASL's alleged conduct caused Plaintiff stress and headaches which she treated with pain relief medication. *Id.* ¶ 37.

The Court finds questions of material fact preclude summary judgment. Courts in New Jersey adopt the Restatement (Second) of Torts in considering claims of intrusion upon seclusion. In this regard, "'[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.'" *Stengart v. Loving Care Agency, Inc.,* 201 N.J. 300, 316, 990 A.2d 650, 660 (2010) (quoting *Restatement (Second) of Torts* § 652B (1977)). The New Jersey Supreme Court explained that plaintiffs have a high threshold to clear when asserting a claim for intrusion on seclusion, stating that plaintiff must establish that the intrusion "'would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object.'" *Id.* (quoting *Restatement (Second) of Torts* § 652B cmt. d). The Restatement, specifically, referencing telephone calls, provides:

> [T]here is no liability for . . . calling [a plaintiff] to the telephone on one occasion or even two or three, to demand payment of a debt. It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded.

*Restatement (Second) of Torts* § 652B cmt. d.

NSL, relying primarily on *Rush v. Portfolio Recovery Assocs. LLC*, 977 F. Supp. 2d 414 (D.N.J. 2013), contends that, as a matter law, Plaintiff's claim fails. Def.'s Br. 23-24. NSL argues that *Rush* set a high bar, requiring a large number of calls in a short period of time. *Id.* at 24. NSL contends that here the calls spanned a two-year period and even accepting Plaintiff's

allegation that there were 611 calls, that amounts to fewer than one call each day.  *Id.*  Moreover, NSL contends that after Plaintiff revoked consent to calls, she answered fewer than ten telephone calls; these facts do not rise to the required levels to constitute tortious conduct.  *Id.*  NSL also contends that Plaintiff cannot establish actual damages relating to the calls.  *Id.* at 25.  NSL contends that Plaintiff alleged that the calls caused her headaches, and she still suffers from headaches even though the calls ceased.  *Id.*  NSL argues that Plaintiff does not present an expert opining that the headaches were caused by the calls.  *Id.*

Plaintiff argues that although *Rush* shows that persistent calling alone cannot sustain an invasion of privacy claim, the issue of whether persistent calls can become offensive if a consumer has told the caller to cease contact or if the caller has left messages should be a question for the jury.  Pl.'s Br., ECF No. 55, 16-17.  Plaintiff contends that NSL called her 881 times during an eleven (11) month period, amounting to eight to ten times a day, including during her workday.  *Id.* at 17.  NSL left messages on her voicemail and, despite Plaintiff requesting that NSL stop calling her on four different occasions, the calls continued.  *Id.* at 17-18.  Moreover, Plaintiff contends that her emotional distress and stress-induced headaches are compensable.  *Id.* at 20.  Plaintiff explains that while she has always suffered from minor headaches relating to her menstrual cycle, she did not suffer from stress-related headaches until the calls began and they ceased when the calls stopped.  *Id.* at 20.  In reply, Defendant distinguishes cases cited by Plaintiff and, in essence, contends that Plaintiff has not triggered the liability of *Rush* as Plaintiff fails to allege extreme conduct – i.e., prying into her personal affairs or attacking, abusing, or insulting her.

6

Here, summary judgment is inappropriate because the Court finds that there are disputed material facts as to whether NSL intentionally intruded upon Plaintiff's solitude or seclusion and whether the intrusion would be highly offensive to a reasonable person. The facts here are different from the facts presented in *Rush*.[4] In *Rush*, defendant contacted plaintiffs up to five times a day over a 4-month period; based on a call log produced by defendant, the time period (two months as opposed to four) and the number of calls (36 listed on the call log) were disputed by defendant. *Rush*, 977 F. Supp. 2d 414 at 417. The *Rush* plaintiffs never answered the telephone, never spoke with defendant, and defendant never left a voice message. *Id.* In January 2012, one month after the calls began, plaintiffs sent a cease-and-desist letter to which defendant responded via letter in February 2012, advising that no additional calls would be made. *Id.* Plaintiffs sent another cease-and-desist letter in May 2012. *Id.* The court found that even if, as alleged by plaintiffs, defendant called more often than outlined in the call log, plaintiffs testified that the calls were merely annoying, not outrageous, plaintiffs never answered the phone, and defendant did not engage in objectionable conduct. *Id.* at 435. Moreover, the court found that even if defendant continued to call after the cease-and-desist letter, plaintiffs never answered the phone. *Id.* Thus, the court found that defendant's conduct was not highly offensive, nor did

---

[4] Each party advances cases for the Court's consideration. The Court has reviewed same and determined that the cases will not be discussed at length as each case is distinguishable from the facts presented here. For instance, Defendant cited cases outside of the Third Circuit – the first, *Oppenheim v. I.C. Sys., Inc.*, 695 F. Supp. 2d 1303 (M.D. Fla. 2010), which indicated that Florida does not adopt the Restatement, and the second, *Marseglia v. JP Morgan Chase Bank*, 750 F. Supp. 2d 1171 (S.D. Cal. 2010), wherein all the calls at issue were placed within one week (this case also addressed a motion to dismiss, not summary judgment). While Plaintiff cited to cases within the Third Circuit, they are distinguishable (and/or were in a different procedural posture). *See, e.g., Desmond v. Phillips & Cohen Assocs.*, 724 F. Supp. 2d 562 (W.D. Pa. 2010)(despite requests to cease communications, defendant continued to call plaintiff attempting to collect a debt from his spouse who had recently passed away), *Corson v. Accounts Receivable Mgmt.*, No. 13-01903, 2013 WL 4047577 (D.N.J. Aug. 9, 2013)(addressing a motion to dismiss, not summary judgment, concerning harassing telephone calls to an elderly plaintiff about another individual's debt).

it rise to the level of outrageousness necessary to sustain a claim for an intrusion on seclusion claim.  *Id.* at 435.

The facts here are distinguishable and largely disputed.  While it appears undisputed that NSL began calling Plaintiff in May of 2017 and the calls did not cease until on or shortly after January 2019, there are material factual disputes concerning the number and frequency of the calls.  Unlike *Rush*, Plaintiff contends that she requested that NSL cease calling her on four different occasions, but NSL continued to call.  Unlike *Rush*, where the calls were made about five times per day and lasted no more than four months, here, Plaintiff contends that NSL called her over 800 times for more than one year and sometimes she received as many as ten calls per day.  NSL does not concede these material facts.  Unlike *Rush*, Plaintiff answered ten of NSL's calls and NSL left her voice messages; the *Rush* plaintiffs never answered the phone and defendant never left messages.  Unlike *Rush,* the Court has not been presented with any testimony that Plaintiff regarded these calls as merely annoying.  Instead, Plaintiff contends the calls caused her stress and headaches and, as she received many calls during the workday, she was once reprimanded by her supervisor after speaking with Defendant.  Giving all reasonable inferences to Plaintiff, a reasonably jury could find, as noted in the Restatement, the "persistence and frequency" amounted to a course of hounding the plaintiff, invading her privacy, and becoming a substantial burden to her existence.  As there are material disputed facts surrounding the number, frequency, timing, and nature of the telephone calls and Plaintiff's requests to no longer receive said calls, summary judgment is denied.[5]

---

[5] Defendant also contends that Plaintiff cannot demonstrate actual damages, however, the facts, both disputed and undisputed, reflect, that Plaintiff felt that Defendant's actions caused her stress and headaches and once the calls

## V. CONCLUSION

For the reasons set forth above, the Court denies Defendant's Motion for Summary Judgment. An accompanying Order will be entered.

Dated: December 23, 2022

*Karen M. Williams*
KAREN M. WILLIAMS
United States District Judge

---

ceased, her frequent, stress-related headaches ceased.   Moreover, Defendant fails to cite to any case requiring Plaintiff to produce an expert relating to the alleged emotional distress.  *See, e.g., Kounelis v. Sherrer,* 529 F. Supp. 2d 503, 532 (D.N.J. 2008)(noting that there is no general rule requiring expert testimony to establish emotional distress).   Here, Plaintiff alleges past "garden variety" emotional distress, as opposed to distress that is present, ongoing, or severe.   Thus, Defendant's Motion is denied on this point.